Good morning, Your Honor. Perry Olson for the appellant. May it please the Court, I'd like to reserve two minutes for rebuttal, if I may. The issue, well, there's two issues before the Court really. One dealing with drug quantity and one dealing with impeachment evidence. The drug quantity issue. The issue is whether the government can use future projected transactions to reach the 1,000-gram threshold, or any weight threshold, if we were to expand this, necessary to establish a mandatory minimum sentence for the crime of a conspiracy to violate the Controlled Substances Act. And we're on a Jackson standard here, or Jackson-Neville standard here, correct? We are. But I think there's some You've got to look at the evidence in the light most Absolutely, Your Honor. Any conflicts that might be there, you resolve in favor of the jury's verdict. I agree. I agree. That is the standard. Once you've done all of that, then you ask, is there any reasonable jury? Any reasonable jury could not or could reach the conclusion that they did. Right. And that's all true, but I think there are some legal principles that do apply to all this. And the legal principles that I talk about the most in my brief are principles relating to conspiracy, that, you know, there has to be an agreement, obviously, to commit a crime, and the agreement has to encompass the full scope of the crime, which in this case is 1,000 grams. Now, traditionally, when you look at, you know, traditional well-established conspiracy law, it's well established that the government may prove a conspiracy through inferences. There doesn't have to be a sit-down meeting of all the conspirators where they hammer out an agreement, obviously. But what the courts have done in those cases is say, well, look at the conduct. The conduct proves the conspiracy and the scope of the conspiracy. If you have a bunch of individuals transacting a certain amount of drugs over a period of time, you can infer that they agreed to deal that amount. And when they talk about, even talk about. That amount. Now, wait a minute. You're conflating two issues. You said there are two. One is, is there a conspiracy to deal drugs? Second aspect is, did they conspire to deal drugs in at least a minimum of 1 kilogram? Correct. And you're, as I understand your argument, and that's why I'm asking, you're focused on the second question. Did they enter into a conspiracy to deal in at least 1 kilogram of drugs within the time period of the conspiracy, which ended in June, what, June 8th? Yes, it ended. 2012. So is it your argument that what the evidence has to reflect is that they actually agreed at the outset or at some point during the conspiracy that they were going to go at least to 1,000? Or are you agreeing that the inference approach that you described was permissible with regard to the first question, that was there a conspiracy at all, that that can also be used, that you can infer from circumstances that they must have agreed or they contemplated doing shipments, transactions, at least in the amount of 1 kilogram? The government can prove the existence and the scope, size of a conspiracy through inferences, and that is true with regard to drug quantity and not just the existence of a conspiracy. But when you look at the cases, Your Honor, that talk about this, the inferences are proven or the inferences as to the size of the conspiracy in terms of drug quantity are proven in one of two ways. Either they have transacted, they have actually engaged in, you know, a series of transactions up to that date where they're arrested, or they've at least talked about future transactions that have yet to occur, or, you know, they find drugs or something like that. There's at least tangible transactions that have occurred, drug seizures that have occurred, or there's at the very least a discussion about ongoing behavior. And that's the situation in the United States v. Turner, which is the case that the district court relied on. I mistakenly cited it as a Ninth Circuit case. It's actually a Fifth Circuit case. But in Turner the Court said, you know, it came down to discussions, just simply discussions, not actually a plan, not a negotiated deal or anything, just discussions about future conduct. And we don't have that in this case. They were all arrested, and that was it. Actually, the last person, Mr. Guzman, was actually arrested with almost 200 grams, so there was that. Breyer. That did reflect a pretty, I don't want to say consistent, but a pretty regular pattern of activity of buying and selling. Well, somewhat. There were some breaks in the action, because there were some bad drugs for a while, for a couple of weeks. And the primary witness who testified for the government, Mr. Ramirez, testified that he wanted out of this, he didn't want to do this anymore, and that was kind of the idea that he might, he would do this for a couple of months and then stop. So, sure. But you would have that in any case involving a person who gets arrested for distributing hand transactions for a period of time and had a regular supplier, you would always be able to say that that person eventually is going to reach that one kilogram amount. And the concern that the defense has in this particular case is, what is the limiting principle then? I mean, if this person here can be chargeable with 1,000 grams of heroin or any other substance that has been reached or not even discussed, what's to prevent the government from charging a guy on the street corner for the same crime, even though he hasn't reached that 1,000 gram? And so that's the way to do it. Could the jury have given to the fact that there was this compartment built into his car that would accommodate sufficient amounts on a particular course? I take your point about the end point. I'm curious what the government says about that. But there is, you said, as long as there's some tangible evidence about ongoing expectations, and there's an empty part of the car and there's nothing in it, but it suggests that they had some plans. Well, I would emphasize that it was empty and a dog hit on something else in the house, but a dog did not hit on that. And there was no evidence. Look, this is a case about 1,000 grams of heroin. I don't think it's completely speculative to say that who knows what might have gone in that compartment. Some other substance. It's speculation as to when that car arrived there, what it was intended for. Okay. So it's in dispute, but you do concede that it was at least relevant to your I'm just trying to explore your concept of what you would concede would be evidence of anticipated future conduct that the jury, from which the jury could infer that there was an intent and a capacity and whatever else to get at least to 1 kilogram. Well, the primary position I'm taking in the brief is that there's got to be at least conversations about it.  If we're talking about capacity, you're always going to have capacity. You're always going to have a drug lab. You're going to have some other indicia found at the defendant's house of drug dealing. So the compartment proves that he or was evidence that he was dealing in drugs. But it doesn't go towards the idea that he reached an agreement, an implied agreement, a suppressed agreement as to quantity. I had a question just moving away from the future analysis that the district court relied on. I had a question about the district court's math because, of course, we can uphold the district court on any basis. So the district court looked at the amount that was found on arrest, which was 274 grams, and then the district court calculated or estimated the drugs based on the sequence of events between Burns and Mr. Ramirez and thought there were 750 grams, but then didn't add them together, which would have been, of course, more than 1,000 grams. And I think your argument on that was, well, there would have been double counting. There were at least 62 grams that the district court would have added in to the 750 grams. But I didn't really see anything in the record that supported that. Was there something supporting that, that inference? Your Honor, the way I would answer that question is to say that, you know, on that aspect of the Court's opinion, it's a little unclear as to whether he's including those seized amounts into that 750-gram amount. What I would say is, obviously, the judge didn't believe that the seized amounts should be included in there, otherwise he wouldn't have gone to the next step to consider, you know, future transactions. But then it's like he forgot about the 274 grams. He focuses on the sequence of sales, comes up with 750 grams, and then said, well, that's not enough, and then goes on to the future, and never circles back to talk about the 274 grams that were found on arrest. Well, I didn't do the math myself, Your Honor. I'll have to confess on that. But I think probably that aspect of it was just a little unclear as far as what he was including in his math, you know, whether the seized amounts were included within. He examined the evidence both from the perspective of Mr. Ramirez receiving drugs from Gruzman Arias, and then he examined the evidence from the standpoint of Mr. Burns receiving drugs from Mr. Ramirez. And he came up with similar amounts, 699 and 750. So he did a very careful analysis of this, Your Honor. And so although it is not completely clear, I don't believe he just, you know, forgot to add in those seized amounts. Is there anything in his opinion indicating a recognition of the 274 grams that were found on arrest? I didn't see that being added back in or referred to. I noted that he, in footnote 3, for example, on ER 12, he refers to the 270 grams while also talking about the 699 grams. So I guess I would point, Your Honor, to that, where he is taking into both into consideration both types of evidence. So, yes, I would just say that this is a unique case in this regard. There are not other cases where the government is relying on just sort of a projection of what's going to happen into the future in the absence of any actual discussion or minimal discussion about what's going to happen in the future. If you had a solid pattern, if you had consistent particular buys over a period of time, I don't know why it wouldn't be reasonable for a jury to infer, well. And the answer to that, Your Honor, is, again, it comes back. The conspiracy was to distribute the heroin. I think the best way, and first of all, I don't think the record is that clear that it was that regular. No, I understand. I understand. I don't know why the jury couldn't. Well, I think the answer is, you know, and this is, you know, as I argued in my brief, you can infer, the core question here is what was the conspiracy? The question is not what would have happened had it continued. It might have reached 1,000. You know, the jury might have concluded that. But was it fair for them, was it reasonable for them to reach the conclusion that that was indeed what they agreed on, either impliedly or expressly? And so that's a ---- Did you want to save some time for rebuttal? I'll save a minute or two. Thank you. We'll hear from the government. May it please the Court. Kathleen Bickers for the United States. Your Honors have already fastened on to the most critical parts of the government's position in this case. And beginning with the fact that we're looking at this evidence in terms of whether any rational trier of fact would have found it sufficient to find the 1,000 grams beyond a reasonable doubt. I like to think I'm a rational trier of fact. I did it for many years. So tell me how you ---- how do you count, you know, if you're going to argue to me, this all adds up, what we have here adds up to 1,000 grams of heroin. Well, even the ---- Do the counting for me. Do the math for me. Just go through. So just as Judge Hernandez did, as the district court did, and as the court ---- as Judge Akuta has noted ---- Well, the judge, you know, in the end, what did he get to, 750 and 699? Which he ---- his 750 grams ---- He said, well, you know, if they hadn't even stopped, they would have continued on. But I want to just work with what's in the record for the moment. Okay. With what's in the ---- With what's in the record. Okay. He focused on the relationship and the history of deals between Acquia, Ramirez, and Burns. And the evidence was that these were several ounces sold over a period of time, and it was regular. There was some breaks for bad dope, but it was fairly regular. And he had analyzed both of those witnesses' testimony, and he came up with what he said was a conservative figure of 750 grams, based upon ---- Did that include the 274? I don't think it did. And I think that that's why we open with that in our brief. I believe, based ---- and I think that the 750-gram quantity comes from footnote 6 at excerpt of record 20. And I think the defense at their own brief at 28 so much as admits that when the conspirators were arrested, they had dispersed no more than 750 grams of heroin over a period of about two months. So at some point ---- True. Why did he go on to calculate beyond that? Did he? I think that that was an oversight, because ---- and it was also an argument that the government was pitching to him at the time, so that he can say, conservatively, we know there was at least 750 grams dealt here. And furthermore ---- The 274 has to be factored into that, and it's not. We don't see that in the record that he made, and we actually ---- the record that he made of his assessment of the credibility of the witnesses and the amounts looks pretty good. So if you say, conservatively, 750 grams, then as Your Honor noted before, you add the 274, you've got the kilogram of heroin. Right. And this jury was bombarded not only with a pattern of criminal conduct indicative of very high-level dealing. I would have to take issue with counsel's statement that this could be like any case, any case you're going to have a hidden compartment. The evidence before the jury from our experts was this was a very unique hidden compartment. Only certain high-level dealers have hidden compartments like this. When this gentleman, Navarrete, first conversed with Ramirez over the phone, when Mr. Ramirez was brought in by another individual as a distributor, the first thing he tells him is, we're going to kill you, your family, the dogs and the chickens if you double-cross us. And so later when Ramirez says at some point he wanted to get out of this, he didn't really appear to feel as though he could get out of it. This is not a street-level operation. This was very high-level. The jury was bombarded with evidence as well, indicating that these gentlemen apparently weren't in a romantic relationship together, but they were burning up the phones. Hundreds of calls with each other, Guzman, Navarrete, calls with other drug organizations. The jury didn't have to speculate, first of all, to get to the thousand grams. They had evidence, hard evidence of dealing. They didn't have to engage in inferences of what this conspiracy was. We have to remember that the con- Pick out a thousand grams out of the air. There had to be some evidence. Right. And they didn't, the evidence that they had was overwhelming. It was a mountain of evidence when you look at it. And the reason why the jury found as they did was because they couldn't ignore those facts. So not only a rational trier of fact, but pretty much any trier of fact who looked at the conduct to discern what that criminal agreement was, because in a conspiracy it is the agreement to commit the crime and the evidence was overwhelming that this was an agreement to commit. The indictment presented to the jury, as I understand it, was that they had a conspiracy to deal in at least a thousand kilograms. And the conspiracy ended on June 8th, 2012. The conspiracy did. Unless you're correct that the 274 is in addition to the 750, which I still don't understand how you get there by the calculations, it came up short. So you have to rely on the inferences that, but for the rest, they would have kept on going. And so that's to say now that the conspiracy was, in fact, established not just as a conspiracy, but one where they agreed to all the elements in anticipation that they would get over one kilogram. So if that's your theory, then why not two kilograms? What's the limiting principle on this approach? If you're going to drive it over the amount that you select and you're going to rely on inferences about what's going to happen, assuming there's no arrest, what's the limiting principle? Why not pick two grams? Well, the evidence limits it. What is the evidence that you have of the quantities that they were dealing? And how close are you to that agreement to deal that particular quantity in the evidence that you have? And what ends that? The conspiratorial agreement occurred. That's the crime. The fact that the police may interrupt someone who's planning to kill somebody doesn't mean that just because it's just a suggestion that the crime would never have occurred. You look back at the evidence, what steps were taken to carry it out? And that's, I would go back to the pattern of conduct and how close it was. Obviously, if you're getting into larger quantities, if the evidence isn't there, if you're not close enough, if then you have to speculate, well, possibly someone, what if someone dropped out, that sort of thing, and you're trying to say, well, it's five kilograms, which the government didn't say here, or you're trying to say it's two kilograms or whatever, then you're always going to be bound by your evidence and you're always going to be limited by what a rational trier of fact would feel comfortable with at the end of the day. So the rule that should emerge from this case, if you win, is that you don't have to prove they actually got there, but as long as they get close enough and it's within some reasonable time of the end of the conspiracy that they would have to project into, that's good enough. For the agreement. I don't think. No, for the agreement to deal one kilogram as a minimum. Right. I don't think we need to get to that argument, but, yes, that argument is there. You don't have to get there because you think they actually did, and that depends on the calculation of the 750. Right, and the amounts that were seized. So help me understand why the 750 doesn't include the 274 grams. So the 274 grams were found on arrest, and then the 750 grams were what? Were the calculation of past transactions? Yes. Right. And you can't include the grams that were found on arrest in the past transactions because Ramirez had never had a chance to sell those to Burns yet. Guzman hadn't given them to Ramirez yet because Guzman was arrested and the 199 grams were in his car. The other 60-some grams were at his house in an additional quantity. So Burns, those can't be the past transactions. That's why we're arguing very strenuously that, yes, you already have a kilo here. So in your view, Judge Hernandez, I believe it was Judge Hernandez. Yes. He just forgot about the 274? Well, I think he didn't include it. It is when you. His memo was very, memorandum was very thorough, very detailed. Well, I think he also, it was very thorough. And he also jumped into the look at the evidence of the agreement in terms of quantity and the level that these gentlemen were dealing, and look at the evidence that nobody appeared to be ending it any time soon. So I think he jumped a little too early into that argument and didn't take care of the 274 grams. Still a remarkable. He clearly identified the 274 grams at the outset. Yes, but he also clearly identified 750 grams as past transactions. The calculation has been furnished me. So Ramirez testified he bought 14 times, and the last purchase was 112 grams. He sometimes purchased 1, 2, or 3 ounces. So if you take that calculation, which in one ounce would be 28 grams. So if you take 112 grams, the last purchase, plus 13 purchases, the balance of the 14, times 28 grams, plus 274, you get to 750 grams. So if you can get to 750 without counting 274, can you do that? Well, I think in his footnote 6, I think he refers back to the previous page on excerpt of record 19, and he describes both Burns' and Ramirez' testimony, and he describes the dealings of, even if you just credit Burns' testimony, you know, there's a few pieces each week going on fairly regularly. So if you throw that in, you get up to 874. And if you throw in, yeah, you can get up by the calculations we've done in my chambers. It gets to 886. You get to over a kilogram because you wind up at over 1,000 grams just by combining the first part of it. You don't get to 750 by adding in these other amounts. He expressed The way you get to 750 is the way I recited it, and then the additional, take it above 750. Well, the district court did expressly say We'll have to go back and look at the record. I would say footnote 6 at the excerpt of record 20. Is that math? So as I understand what Judge Fischer is saying, and I understand this footnote, the district court said the sale from Ramirez to Burns was 750 grams. And is that number supportable in the record, I guess would be? Or is that an error? Is that itself an error, that there isn't evidence supporting the district court's finding that Ramirez sold Burns approximately 750 grams of heroin? Well, I think that's a compromise figure because when you look at the Burns' testimony, which the judge does summarize, if you believe that they met as frequently as Burns said that they did and he wasn't buying less than an ounce, then you could be up to 3 kilograms of heroin. And I believe that Judge Hernandez, he even specifically says, it's speculation at some point to determine how much was actually distributed based upon Burns' testimony. And that's where he drops the footnote. The only conclusion the jury could reach without speculation is that Defendant Acquia Ramirez sold Burns approximately 750 grams of heroin. So he says that, but is that supported by the record, I guess is the question. Is there evidence that would support that? Because as I understand it, there were eight weeks in which there were transactions between Burns and Ramirez. Well, the testimony varies with Acquia Ramirez and Burns. To be fair, Burns indicates a lot more deals than Ramirez does, but there is a fluctuating period of time. As at excerpt of record number 19, page 16 of the opinion, a reasonable juror could conclude based upon 2.2 times per week over a period of 10 weeks, there were at least 22 meetings. And the jurors were exposed to all of the evidence, not only Ramirez's evidence, but also Burns' evidence. And we're not here to second guess which witness the jurors decided to believe. Obviously, they credited Burns' testimony to some degree. And they could well and were within their right to credit Burns' testimony to establish the kilogram quantity. Because if you look at Burns' testimony, that frequency of meetings, that would indicate much more than a kilogram of heroin. I noticed I'm in the red area. Yes. Thank you, Counsel. Thank you. I wasn't aware of that. I wasn't anticipating that this would boil down to an issue of mathematics. Not my strong suit. But I would just reiterate that, you know, footnote 3, which talks about. But that talks about based on Ramirez's testimony alone, whereas, obviously, later the court is looking at, the district court is looking at Burns' testimony. Right. But the testimony was such that, you know, those amounts, 699 and 750, are fairly close to each other. And, you know, there was evidence that, well, so they're fairly close is the point I want to make. And so, you know, I believe you can infer from this that, you know, the 750 amount, even though it's not very clear in footnote 6, includes the 274 just as footnote 3 does. What I don't understand is the 274 is what was found on arrest. So you know it wasn't part of past transactions. That was what was there. And the testimony by Burns is about past transactions. And that's what the district court is basing it on. So based on that absence of direct connection, I just don't see how that was included in the 750. All I know, Your Honor, is that I think Judge Hernandez did a very careful analysis here. And there is a question there. There is some ambiguity there. But I don't think he would have reached the final part of his decision without concluding that based on the testimony of both witnesses, the evidence was insufficient. Thank you.  Thank you, counsel. We appreciate your arguments this morning. And I believe that concludes our session. Thank you very much. The matter is submitted. This court for this session stands adjourned.
judges: Fisher, Paez, Ikuta